**Cara Leslie ALEXANDER,
et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.**

**Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.**

United States District Court,
District of Columbia.

Feb. 24, 1999.

———

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiffs.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for Anthony Marceca.

Robert C. Bernius, Garrett Scott Flynn, Nixon, Hargrave, Devans & Doyle, L.L.P., Washington, D.C., for J. Lowe Davis.

*MEMORANDUM AND ORDER*

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion [448] to Compel Further Testimony from J. Lowe Davis and for Attorneys' Fees and Costs and Non–Party Davis's Request for Attorneys' Fees and Costs. Upon consideration of both motions, non-party Davis's opposition to plaintiffs' motion, plaintiffs' reply thereto, and plaintiffs' opposition to non-party Davis's motion, the Court will DENY plaintiffs' motion and GRANT non-party Davis's Request for Attorneys' Fees and Costs, as discussed and ordered below.

## I. *Analysis*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations. The instant dispute revolves around the deposition of J. Lowe Davis, the alleged source of information about Linda Tripp's 1969 arrest record for Jane Mayer, who originally published a story regarding Tripp's failure to disclose a previous arrest on her FBI background check. Davis is also Tripp's former stepmother and an Assistant Managing Editor of the *Pensacola News Journal.*

The Court has already ruled that evidence regarding the misuse of Tripp's FBI file information is discoverable in this case, as it may prove to be circumstantial evidence of the same types of abuses with regard to plaintiffs' claims. *See FBI v. Alexander,* C.A. 96–2123, Memorandum and Order at 6–7 (D.D.C. Apr. 13, 1998). Davis is a logical witness in this line of discovery because she is alleged to be Jane Mayer's source of information on Tripp's 1969 arrest record; that information was later used in a *New Yorker* magazine article accusing Tripp of lying on her FBI background investigation when she denied ever having been arrested. Plaintiffs allege that the defendants played a role in the release of information contained in that article. If Davis was indeed Mayer's source of information, one potential avenue of White House involvement would be eliminated.

On June 11, 1998, Davis moved for a protective order based, in part, upon the potential for "annoyance, embarrassment, oppression and undue burden" in connection with possible testimony regarding Davis's professional life as a journalist and private family matters relating to her former stepdaughter and ex-husband, "which occurred almost 30 years ago." *Davis's Motion for Protective Order at 8–9.*

■ In opposing Davis's earlier motion for a protective order, plaintiffs made two specific assurances that are relevant to the instant dispute. First, plaintiffs stated that "Ms. Davis has been subpoenaed in her individual, not professional, capacity, and Plaintiffs are not interested in her role as a reporter." *Plaintiffs' Opposition to Davis's Motion for Protective Order at 6; see also id.* ("Plaintiffs have subpoenaed [Davis] in her individual capacity, and thus her appearance will avoid *any* intrusion into her professional affairs." (emphasis added)). Second, plaintiffs represented that "Plaintiffs have no intention of inquiring into Ms. Davis' private family matters." *Id.*

Relying upon plaintiffs' representations, the Court denied Davis's motion for a protective order. Obviously, there would be no need to grant a protective order to Davis on matters that plaintiffs have explicitly agreed not to pursue. Thus, the Davis deposition went forward and took place on June 26, 1998.

Plaintiffs now seek to compel answers to questions that went unanswered at Davis's deposition. These questions can be broken down into two categories: those involving Davis's family life, and those involving Davis's professional life or opinions. Plaintiffs' reply memoranda lists the following eight types of questions to which plaintiffs seek to compel answers:

1. Where Davis learned that Tripp blamed her for the break-up of her marriage with Tripp's father.

2. Whether Tripp's father told Davis about an incident in which Tripp reported-

ly vandalized her father's car when he denied Tripp permission to attend a concert.

3. Why Davis thought that her statement in one of her articles that Tripp "gave betrayal a bad name" was negative.

4. Why Davis thought that Tripp did in fact "give betrayal a bad name."

5. Whether Davis wanted more information from Mayer for a second article that Davis planned to write on Tripp.

6. Whether, in Davis's experience as a journalist, she thought Mayer's article on Tripp was "trash" or "neutral journalism."

7. Whether Davis teaches her colleagues and employees to be accurate in their reporting.

8. What Davis meant when, in one of her articles, she wrote that she was grateful that she did not earn more than a mention in Mayer's article on Tripp.

*Plaintiffs' Reply Memoranda and Opposition to Davis's Request for Sanctions.*

It is apparent that these questions implicate the aforementioned assurances of plaintiffs' counsel. Although plaintiffs never squarely address how these questions fall outside of plaintiffs' counsel's previous representations, plaintiffs contend that these matters all go to bias and credibility. Plaintiffs then go on to cite the rule that evidence of bias and partiality is "never collateral or irrelevant," citing *Barnard v. United States*, 342 F.2d 309, 317 (9th Cir.1965).

The Court will deny plaintiffs' motion to compel. Plaintiffs clearly represented to opposing counsel and to the Court that they had "no intention of inquiring into Ms. Davis' private family matters," that plaintiffs "are not interested in Davis's role as a reporter," and that plaintiffs "subpoenaed [Davis] in her individual capacity, and thus her appearance will avoid any intrusion into her professional affairs." These representations are couched in broad terms; nonetheless, they are the terms chosen by plaintiffs in a written memorandum submitted to the Court, and they are the words that should bind plaintiffs' conduct.

Testimony on why Davis and her ex-husband were divorced and the story of Tripp allegedly vandalizing her father's car clearly involves private family matters. Plaintiffs have represented that they would not inquire into these matters. Therefore, the Court will not compel testimony on these questions. Likewise, questions relating to articles Davis wrote, her professional journalistic opinion, or what she teaches her media colleagues all fall within the category of Davis's role as a reporter and her professional affairs. Plaintiffs also represented that they would not inquire into these matters. Therefore, the Court will not compel answers to these questions.

Plaintiffs' theory that all of these questions go to bias and are therefore relevant does not lead to the relief plaintiffs seek. First, as alluded to above, parties are free to exclude matters that may be relevant in order to reach a discovery agreement. The Court and Davis both relied justifiably on the representations plaintiffs made in their motion opposing a protective order. Plaintiffs cannot be allowed to contravene those representations now simply because they seek relevant matter (assuming the validity of plaintiffs' bias argument). Second, even ignoring plaintiffs' disregard of their prior representations, the Court will not at this time allow plaintiffs to compel further testimony that goes exclusively to the bias of Davis, a witness who apparently will have little to offer in the way of any White House connection to the release of plaintiffs' FBI file information. Moreover, Davis has already provided testimony on bias. Davis testified that she disapproves of the taping of Tripp's conversations with Monica Lewinsky. *See* Davis Depo. at 76–81 & 157. The articles written by Davis regarding Tripp speak for themselves in terms of bias. For example, testimony along the lines of whether Davis thought her written statement that Tripp gave "betrayal a bad name" was negative adds little to the evidence in this lawsuit. As mentioned above, the connection between the Tripp matter and the plaintiffs' claims in this case is only circumstantial. More testimony on the bias of a witness who has little more to offer on a circumstantial topic would be a waste of time. For these reasons, plaintiffs' bias argument must be rejected.

Confronted with plaintiffs' counsel's disregard of his earlier representations to this Court and Davis's counsel, sanctions must now be addressed. As an initial matter, plaintiffs' motion for attorneys' fees and costs will be denied. Davis's counsel acted properly in instructing his client not to answer questions that plaintiffs' counsel explicitly stated would not be asked.

■ Davis's request for attorneys' fees and costs merits closer attention. Davis seeks to recoup her costs and attorneys' fees associated with her opposition to plaintiffs' motion to compel. *See* FED.R.CIV.P. 37(a)(4)(B). Rule 37(a)(4)(B) states:

> If the motion [to compel] is denied, the court ... shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the ... deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses just.

*See id.* As stated above, plaintiffs' motion to compel will be denied. The Court has afforded plaintiffs an opportunity to be heard through written memoranda.[1] Therefore, the Court "shall" require plaintiffs or plaintiffs' counsel to pay Davis's costs and attorneys' fees associated with their opposition to plaintiffs' motion, unless plaintiffs' motion was substantially justified.[2]

The Supreme Court has stated that a party meets the "substantially justified" standard when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Court finds that plaintiffs' counsel, in filing this motion on behalf of his clients, was not substantially justified. Reasonable people simply could

not differ on the relevant facts in this regard. Plaintiffs' counsel made specific, written representations stating that he had "no intention of inquiring into Ms. Davis' private family matters," that plaintiffs "are not interested in Davis's role as a reporter," and that plaintiffs "subpoenaed [Davis] in her individual capacity, and thus her appearance will avoid any intrusion into her professional affairs." As explained in detail above, plaintiffs' counsel chose to inquire repeatedly into these matters. The deposition transcript is replete with instances in which this occurred, many of which went unmentioned in either party's memoranda. Amazingly, the very questions the plaintiffs seek to compel are the questions that evidence a lack of substantial justification. Davis, as a non-party, appeared for her deposition, answered all of plaintiffs' counsel's relevant questions fully, answered many irrelevant questions as well, and even responded to some questions on topics that she was explicitly told would not arise. To force the additional burden and cost upon Davis of opposing a motion to compel answers to these improper questions would indeed be unjust. Therefore, Davis's request for attorneys' fees and costs will be granted.

In addition to the reasons already mentioned, the Court's conclusion is buttressed by plaintiffs' failure to squarely address Davis's primary contention in favor of sanctions (and, for that matter, in opposing the merits of the motion to compel). Davis relied almost exclusively in her opposition to plaintiffs' motion to compel and in her request for sanctions on the argument that plaintiffs' counsel acted improperly by inquiring into matters that he had already represented he would avoid. It was only in a supplemental memorandum that Davis even attempted to present an argument in support of various evidentiary objections made at the deposition. *See Supplemental Memorandum of Non–Party J. Lowe Davis in Opposition to Plaintiffs' Motion to Compel and*

---

1. The "opportunity to be heard" requirement can be satisfied by hearing arguments on written submission. *See* Advisory Committee Note on Rule 37, 146 F.R.D. at 690; *see also* 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, RICHARD L. MARCUS ET AL, FEDERAL PRACTICE AND PROCEDURE § 2288, at 663–664 & n. 25 (1994).

2. As can be seen from the wording of the rule, the burden of persuasion rests upon the party that filed the losing motion to compel. *See* FED. R.CIV.P. 37(a)(4)(B); *see also* WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2288, at 665 (adopting this interpretation).

*Request, of Ms. Davis, for Attorneys' Fees and Costs.* Plaintiffs' reply memorandum (like their motion to compel) dealt almost exclusively with privilege arguments instead of rebutting Davis's primary assertions. Courts have found that a failure to oppose a request for sanctions in relation to a losing discovery motion evidences a lack of substantial justification. *See Brown v. State of Iowa,* 152 F.R.D. 168, 173–74 (D.Iowa 1993); *M & D Builders, Inc. v. Peck,* 109 F.R.D. 410, 412 (D.Mass.1986). Although plaintiffs have filed in name an opposition to Davis's request for sanctions, the substance of the opposition ignores the most important argument. The Court is left to wonder how any substantial justification can exist when an explanation is not even proposed by plaintiffs' counsel.

Therefore, because plaintiffs' counsel was not substantially justified in filing a motion to compel answers to questions that he had already represented would not be asked, the Court will grant Davis's request for attorneys' fees and costs.

## II. *Conclusion*

For the reasons stated above, the Court HEREBY ORDERS that:

1. Plaintiffs' Motion to Compel Further Testimony From Non–Party J. Lowe Davis and for Attorneys' Fees and Costs is DE-NIED.

2. Non–Party J. Lowe Davis's Request for Attorneys' Fees and Costs is GRANTED. Non-party Davis is entitled to the reasonable expenses incurred in opposing plaintiffs' motion, including attorneys' fees. In this regard, it is FURTHER ORDERED that non-party Davis shall, within ten days, submit the appropriate request for fees and costs to be awarded by the Court. Within ten days thereafter, plaintiffs may submit for the Court's consideration an opposition to Davis's request.

SO ORDERED.