Cara Leslie **ALEXANDER**,
et al., **Plaintiffs**,

· v.

**FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.**

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

March 31, 1999.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC,

Peter Z. Zimroth, Arnold & Porter, New York City, for Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for Anthony Marceca.

Timothy B. Mills, Patton Boggs, L.L.P., Washington, D.C., for Lanny Davis.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion [411] to Compel Further Testimony and Further Production of Documents from Lanny J. Davis and for Sanctions; Defendant Executive Office of the President's Cross–Motion [469] for Attorneys' Fees, Costs and Sanctions; and Non–Party Lanny J. Davis's Cross–Motion [N/D] for Sanctions Against Judicial Watch, Inc., and Larry Klayman Individually. Upon consideration of these motions and all oppositions and replies thereto, the court will DENY Plaintiffs' Motion [411] to Compel Further Testimony and Further Production of Documents from Lanny J. Davis and for Sanctions; DENY Defendant Executive Office of the President's Cross–Motion [469] for Attorneys' Fees, Costs and Sanctions; and DENY Non–Party Davis's Cross–Motion [N/D] for Sanctions Against Judicial Watch, Inc., and Larry Klayman Individually, as discussed and ordered below.

### I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

The dispute now before the court centers around the deposition of Lanny J. Davis, former Special Counsel to President Clinton. Despite the fact that Davis was employed in

his capacity as Special Counsel well after the events that comprise the bulk of the subject matter of this litigation occurred, and regardless of Davis's repeated pleas to plaintiffs both before and after his deposition that he has no knowledge of any facts pertaining to any misuse of government files, plaintiffs claim that Davis is "a figure central to the Filegate scandal and essential to [p]laintiffs' discovery efforts." Plaintiffs' Mot. to Compel at 1. The motions of both plaintiffs and non-party Davis are fraught with hyperbole, mischaracterizations, and outright false statements.

Plaintiffs attempt to support their theory of Davis's "central" role by representing in the very first paragraph of their Motion to Compel:

> [The White House Counsel's Office], which helped orchestrate the unlawful transfer of hundreds of FBI files, is the very situs of events giving rise to much of Plaintiffs' claims. In remarks made after her grand jury testimony, Ms. Linda Tripp, *who worked at the White House Counsel's Office while Mr. Davis was acting as Special Counsel to the President,* implicated the White House Counsel's Office in a continuing course of unlawful conduct.

Plaintiffs' Motion to Compel at 1. The underscored portion of plaintiffs' representations to the court, as plaintiffs' counsel now admits, is false. *See* Affidavit of Kevin T. Pogoda, Esq. (attached to plaintiffs' opposition to Davis's cross-motion for sanctions). Davis's employment as Special Counsel commenced two years after Tripp's term with the White House had ended. Davis Depo. at 10, 46.

But the falsity and recklessness of this statement, which is only one example among several other similar instances, do not prevent plaintiffs' counsel from impugning Davis and overstating his role in this lawsuit:

> In particular [with regard to the White House Counsel's Office], it has been reported that Ms. Tripp witnessed a White House Counsel secretary loading up "handtrucks of FBI files" on a computer....
>
> Mr. Davis, in his role as Special Counsel to the President in the White House Coun-

sel's Office, undoubtedly had access to this and other information relating to Filegate.... [G]iven his role as a public spokesman and his placement inside the Clinton White House Counsel's Office, Mr. Davis undoubtedly possesses knowledge of the unlawful misuse of government files by the Clinton Administration.

Plaintiffs' Motion to Compel at 2. In short, much of plaintiffs' rendition of "facts" is constituted of inferences drawn upon mischaracterizations, such as Davis's "undoubted[ ]" access and knowledge of the misuse of government files based upon a misstatement regarding his employment.

The court has grown weary of plaintiffs' counsel's use—and abuse—of the discovery process. The court has already sanctioned plaintiffs' counsel for making representations to the court, allowing the court to rely upon those representations in a favorable ruling, and then later contravening those very (mis)representations. *See Alexander v. FBI,* Civ. No. 96–2123, Memorandum and Opinion, 186 F.R.D. 144 (D.D.C. Feb. 24, 1999) (sanctioning plaintiffs' counsel for representing that he would not inquire into certain irrelevant matters with a non-party deponent, J. Lowe Davis, but later inquiring into those very same matters). The court will allow plaintiffs' counsel to prosecute its case for his clients, but it will not allow plaintiffs' counsel the leeway to abuse the discovery process in so doing.

This is not to say that plaintiffs' counsel's has been the only misconduct in this litigation. The court has seen similar misconduct from witnesses, non-parties, and attorneys aligned with defendants. In the instant motion, it is non-party Davis whose memoranda, in part, are based upon a rendition of testimony that is contradicted by certain statements at the deposition. These arguments, which pertain to plaintiffs' motion to compel documents from Davis, will be addressed more fully below. For now, however, it is sufficient to note that Davis's attorneys represent to the court that Davis's "sworn testimony makes clear" that (1) he "did not collect information about an individual" and (2) "did not store information about ... an individual in files retrievable by the name ... of an individual." *See* Davis's Reply to Cross–

Motion for Sanctions at 8. To the contrary, a reading of the deposition transcript reveals that Davis unambiguously testified, for example, that he (1) "would tear out a newspaper article that [he] read that might pertain to something that was current about Mr. Starr" and (2) "would put it in the folder with [Starr's] name on it." Thus, were the court to take at face value what Davis claims his "sworn testimony makes clear," the court would be relying on significant mischaracterizations with meaningful consequences.

Attorneys do their own clients a disservice—by losing credibility with the court—when they fail to accurately represent facts and then base their legal arguments on these inaccuracies. The attorneys in this case must make accurate representations to the court. Moreover, the attorneys must be trusted to "play nice" when they are not within the confines of the courthouse but still within the court's discovery process.

Plaintiffs have now (presumably) read numerous opinions from this court on what is and is not discoverable in this case. Namely, the court has held to be discoverable inquiries reasonably calculated to lead to the discovery of evidence of government misuse of plaintiffs' FBI files and government misuse of Tripp's government files to the extent that it may provide a connection to the defendants in this case. Although the court does not rule that these are the only proper areas of inquiry, as this issue can be judged only on a case-by-case basis, it should be obvious that questions such as what newspapers. Davis reads, where he has lunch, whether "White House people hang out" at any given establishment, and whether Davis thought plaintiffs' counsel was a lunatic clearly call for irrelevant material. The court has already noted plaintiffs' counsel's "penchant for asking irrelevant questions" and stated that plaintiffs' habit of taking depositions of marginal relevance will be done at their own peril, in light of the procedural limitations on depositions under the federal rules of civil procedure. Apparently, the possibility of prejudicing his own clients' case (in the form of an unfavorable ruling on further depositions) has not dissuaded plaintiffs' counsel from these practices. If this case is ever to proceed to a ruling on class certification and other dispositive motions, the parties (and non-parties) must act in accordance with their duties as officers of the court. Too much time is being wasted claiming unnecessary privileges, such as "freedom of information privilege," and moving for sanctions at the drop of a hat. These satellite matters only waste time and slow the handling of other cases before the court.

Against this backdrop, plaintiffs seek to compel further testimony and documents from non-party Davis, in addition to sanctions against counsel for the government and Davis. Defendants and non-party Davis respond with cross-motions for sanctions. The court will deny plaintiffs' motion to compel, deny defendant EOP's cross-motion for sanctions, and deny non-party Davis's cross-motion for sanctions.

## II. *Plaintiffs' Motion to Compel*

### A. *Testimony*

#### 1. *White House Office Database (WHODB)*

■ Plaintiffs first seek to compel Davis to answer questions regarding what he was told in a White House Counsel's Office meeting regarding the WHODB. The court has already discussed in an earlier opinion the relevance of plaintiffs' inquiries regarding this database, which is generally comprised of lists and information about political supporters of the President for political and social purposes. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order (D.D.C. Dec. 23, 1998).

Plaintiffs specifically seek to compel Davis to answer a narrow question regarding what he was told about the WHODB at the White House counsel meeting. As Davis testified in his deposition, the WHODB came up during this meeting because the Counsel's Office was preparing to respond to congressional inquiries regarding this database system. Davis Depo. at 352; *see also* Declaration of Sally Paxton ¶ 3 (stating that she was present at this meeting and the WHODB came up in the context of congressional inquiries). Defendants objected to this question on the basis of the presidential communications, at-

torney-client, and attorney work-product privileges.[1] However, defendants objected to this question only to the extent that it impinged upon communications made at this meeting. Davis was allowed to and did answer numerous other questions exploring his understanding of the WHODB, without limitation the source of the information that served as the basis of his understanding. For example, Davis was asked and answered the following questions: "What is your understanding of what WHODB is?" Davis Depo. at 360; "Do you know who conceived of the WHODB?" *Id.*; "Do you know of anyone who does know that?" *Id.*; "Have you ever heard anyone express their understanding who conceived the WHODB?" *Id.*; "[I]n terms of the WHODB, are you aware of what information can be kept on this database?" *Id.* at 364; "Who paid for the WHODB?" *Id.* at 365; "Why is it legal?" *Id.* at 366; "Do you know how data is stored on WHODB?" *Id.* at 368; "Do you know who had access to WHODB when you were at the White House?" *Id.*; "Do you know how WHODB can be accessed, how an individual wants to get on to that database and can access it?" *Id.* at 370. Davis's answers to these questions showed that he had little knowledge about the WHODB, and the knowledge he did have was generally gained from newspaper accounts.

Despite receiving answers to all of these questions except, specifically, what he was told about the WHODB in a White House Counsel's meeting, plaintiffs seek to compel an answer to this sole outstanding question on this issue. Plaintiffs' reason that this answer is necessary "to determine whether statements made about WHODB to Mr. Davis contradict his own understanding of WHODB." Plaintiffs' Mot. to Compel at 9.

Plaintiffs' request will be denied. First, Davis's knowledge about the WHODB has been thoroughly explored by plaintiffs. Davis testified at his deposition to everything that he knows about this database. Anything that would be encompassed as to Davis's general knowledge about the WHODB would include anything that he learned at the pertinent White House Counsel's meeting. Thus, further testimony on this point would be cumulative. Second, the court has difficulty believing that the true reason plaintiffs seek an answer to this question is to find out if anything said during that conversation contradicted his understanding of the WHODB; for this question was never asked. Third, the plaintiffs have made no reasonable showing of the relevance of this additional inquiry as to what Davis was told in the meeting, beyond the general relevance of the question that he has already answered. For these reasons, plaintiffs' request to compel Davis to answer a question as to what he was told in a certain White House Counsel's Office meeting in which the issue of the WHODB arose will be denied.

### 2. *Davis's Duties as Special Counsel*

■ Plaintiffs next seek to compel Davis to answer a question which asked about what White House Counsel Jack Quinn told Davis his duties and responsibilities were in working for President Clinton. Much like the earlier issue of the WHODB, Davis testified fully about what his duties and responsibilities were as Special Counsel to the President. Davis was not allowed to testify, however, as to the narrow issue of what he was told by White House Counsel Quinn. The government objected to this question on the grounds of the presidential communications privilege. Plaintiffs contend that this inquiry is relevant because they are seeking "important background information" and testimony that "is essential to lay a proper foundation for questions relating to his role as Special Counsel." Plaintiffs' Motion to Compel at 9.

The court will deny plaintiff's request to compel this information. First, as stated above, further testimony on this point would be cumulative. Davis has already testified exhaustively as to what his duties and responsibilities as Special Counsel were. Davis Depo. at 32–33, 40. Second, plaintiffs provide no legitimate reason why what another Counsel told Davis his duties were, when

---

1. On July 29, 1998, the court granted defendant EOP's motion to bifurcate the determination of the presidential communications privilege claim. In light of the court's ruling today, it will be unnecessary to made a determination as to that issue.

plaintiffs have already been told what, in fact, the duties were, would add any testimony of further relevance. Third, Davis has testified that the conversation did not involve any mention of the misuse of government files, be they plaintiffs' or anyone else's, as Davis's duties related "almost exclusively" to press concerns regarding campaign finance scandal allegations and the White House Travel Office investigation. Fourth, the court has made a similar ruling in this case when the same issue arose as to one of the President's advisors, Paul Begala. In that context, Begala was asked and answered questions about his duties as an advisor to the President, but the court sustained his relevance objection as to what he was told his duties were. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 42–44 (D.D.C. May 28, 1998). For these reasons, the court will deny plaintiffs' motion to compel Davis to answer what he was told his duties were by a former White House Counsel.

### B. *Documents*

■ Document request number 20 (out of 57) of plaintiffs' subpoena duces tecum to non-party Davis asked, among other things, for "[a]ny and all records, correspondence, notes, communications or other documents concerning or relating to . . . any instance of actual or potential obtaining and misuse of government files" within the custody, possession, or control of Davis. Non-party Davis timely objected to this document request, pursuant to FED.R.CIV.P. 45(c)(2)(B), stating that the request as stated was overly broad in that it did not seek information reasonably calculated to lead to the discovery of admissible evidence. *See* Non–Party Davis's Opposition, Ex. 4, at 7. Furthermore, Davis states that he "has no records, correspondence, notes, communications or other documents concerning or relating to the acquisition, collection, research, compilation, recordation, dissemination, or disclosure of any materials created and or maintained by an agency or entity of the executive, legislative, or judicial branches of the United States (or any state, foreign government or any international organization) about any former employee or appointee of the Reagan or Bush Administra-

tion[s], or any current or former employee or appointee of the Clinton Administration or any other person that relates to the issues raised by the Complaints." *See id.* Plaintiffs believe that Davis's deposition testimony is to the contrary, and they seek to compel Davis "to produce all documents relating to the system of records he unlawfully maintained under the Privacy Act." Plaintiffs' Motion to Compel at 5.

At his deposition, Davis testified that he was "primarily responsible" for dealing with the White House press corps "almost exclusively to talk to the press about and to assist the press in writing stories concerning campaign finance allegations." Davis Depo. at 32–33, 40. Davis further testified that in discharging this duty, he would keep press clippings and White House press statements that pertained to his job as a White House spokesman on the issue of campaign finance. Davis would occasionally put these newspaper clippings in manilla folders with the person's or subject's name to whom the article pertained written on them (*e.g.*, John Huang, Thompson committee hearings). In his capacity as a press officer, Davis would sometimes disseminate copies of these newspaper articles in order to help the press write stories favorable to the President.

From this testimony, plaintiffs contend that Davis is withholding relevant information responsive to plaintiffs' subpoena duces tecum. Plaintiffs contend that these newspaper clippings were "records" kept by an employee of a government agency in a "system of records" as all of these terms are defined under the Privacy Act, 5 U.S.C. § 552a. Continuing with this reasoning, plaintiffs argue that Davis violated the criminal and civil provisions of the Privacy Act by "disseminating" this information without the consent of the subjects of the "records" and that he failed to comply with the Privacy Act requirement to publish a notice of this system of records in the Federal Register (assuming Davis claims the "routine use" exception). To finish this reasoning, plaintiffs contend that, because Davis maintained these records illegally, all of these records are examples of the "misuse of [government files]" and therefore responsive to plaintiffs' subpoena duces

tecum. Of course, implicit in all of this is that the information plaintiffs seek to compel is reasonably calculated to lead to the discovery of admissible evidence. *See* FED.R.CIV.P. 45 & 26(b).

The court will deny plaintiffs' request to compel these documents on relevancy grounds, but it reaches no conclusion on the legal viability of plaintiffs' allegations against Davis as to any violations of the Privacy Act (and therefore the responsiveness of the documents to the subpoenas).

Davis never contends that he is not a member of an "agency" as that term is defined in the Privacy Act. Instead, Davis makes three factual arguments for why these records would not fall under the Privacy Act, all of which are incorrect. Specifically, Davis argues that he:

(a) did not collect information about an individual, but instead collected information about the subject matter of issues (e.g., campaign finance); (b) did not store information about or concerning an individual in files retrievable by the name or identifier of an individual, but instead put the press clippings into subject matter folders; (c) did not incorporate any such, information into a Privacy Act system of records, but instead maintained folders strictly for his own reference as to the public statements made by the White House to news organizations about campaign finance and about new organizations' coverage of campaign finance and related subject matter.

Davis's Reply in Support of Cross–Motion for Sanctions at 8. Some of the testimony given at Davis's deposition clearly belies all of these assertions. First, while it is true that at one point Davis said he collected information on certain subjects, as opposed to individuals, at other points Davis clearly stated that he collected newspaper clippings "about" certain individuals. *See e.g.,* Davis Depo. at 195 ("I would tear out a newspaper article that I read that might pertain to something that was current *about Mr. Starr* ... and I would put it in the folder with his name on it." (emphasis added)). Second, this same example regarding Starr also undercuts Davis's argument that he "did not store information about or concerning an individual in files retrievable by the name or identifier of an individual, but instead put the press clippings into subject matter folders." Again, for example, Davis clearly and unambiguously stated that he "would tear out a newspaper article that [he] read that might pertain to something that was current about Mr. Starr ... *and [he] would put it in the folder with [Starr's] name on it.*" *Id.,* (emphasis added). Third, the proposition that Davis did not disclose these newspaper clippings, or at least the information contained therein, to the press is not clear from the record. *See* Davis Depo. at 238 (Q: "From time to time, because you were gathering these materials and filing them to help the reporters write stories, you would send them copies of some of these materials?" A: "If they asked me." ... Q: "You did that?" A: "Yes."). In summary, the court rejects Davis's factual arguments on all three of these fronts because they are not substantiated by the record.

Davis also takes issue with the notion that the newspaper articles are "records" as the term is used in the Privacy Act. The Privacy Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency ... that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. 552a(a)(4). Courts have held that "publicly available information, such as newspaper clippings or press releases, can constitute a 'record.' " U.S. DEP'T OF JUSTICE, FREEDOM OF INFORMATION ACT GUIDE AND PRIVACY ACT OVERVIEW 633 (Sept.1998 ed.) (citing *Clarkson v. IRS,* 678 F.2d 1368, 1372 (11th Cir.1982); *Murphy v. NSA,* 2 Gov't Disclosure Serv. (P–H) ¶ 81, 389 (D.D.C. Sept. 29, 1981); OMB Guidelines, 40 Fed. Reg. 56741, 56742 (1975)). Thus, the idea that these materials cannot be records simply because they are newspaper clippings appears to be incorrect under the plain language of the statute and the majority of the caselaw. *But see Cochran v. United States,* 770 F.2d 949, 959 n. 15 (11th Cir.1985) (stating that "it might be questioned whether

current newsworthy information of interest to the community, such as contained in the press release at issue in the present case, even falls within the Privacy Act"). However, the law in this circuit does not specifically address this point.

The court notes, however, that Davis's testimony in other parts of his deposition that he was simply collecting articles based on subject matter, but not individuals, creates some conflict as to whether these newspaper clippings were really "about" any of the given individuals for the purposes of the Privacy Act. *See Tobey v. NLRB,* 40 F.3d 469 (D.C.Cir.1994) (holding that the "fact that information contains an individual's name does not mean that the information is 'about' the individual" because the Privacy Act protects "only information that actually describes the individual in some way"). Moreover, the law of this circuit is not abundantly clear on whether the release of this public information would necessarily be a disclosure in violation of the Privacy Act. *See Pilon v. United States Dep't of Justice,* 73 F.3d 1111 (D.C.Cir.1996) (noting that "[t]his case does not present the question of whether an agency may ... release a document that has already been fully aired in the public domain through the press or some other means").

In short, the issue of whether Davis's files, as described above, are subject to the Privacy Act and maintained in contravention of that act is thorny, at best. Several things are clear, however. First, the documents are not even responsive to plaintiffs' subpoena unless they are evidence of government misuse of information. Second, the issue is not as clear as plaintiffs would have the court believe. Third, Davis's factual arguments as to why his records necessarily fall outside of the Privacy Act are unpersuasive given conflicting testimony during his deposition. Fourth, and most importantly, even assuming that the materials collected by Davis are responsive, the court finds these materials to be irrelevant, as discussed below.

As stated above and on numerous other occasions, the scope of discovery in this case includes (but is not necessarily limited to) evidence bearing upon the misuse of plaintiffs' FBI files and the misuse of Tripp's government file to the extent a White House connection is involved. The court believes that the information requested by plaintiffs in this instance—copies of newspaper clippings on unrelated subject matter—from a non-party witness is beyond the pale of discoverable information. Whether these materials amount to a violation of the Privacy Act (and are therefore responsive to plaintiffs' subpoena) may be an interesting legal exercise and potentially the subject of some other case at another time, whether Davis did indeed put these newspaper clippings pertaining to his job in manilla folders in his desk is far afield from the types of misuse alleged in plaintiffs' complaint. Even if the court were to accept everything that plaintiffs claim as to the illegality of Davis's conduct, which is problematic given the legal quagmire of the Privacy Act law on this point, this would show nothing more than marginal circumstantial evidence, at best. The line must be drawn somewhere. Given the tangential nature of this material, in addition to the court's duty to protect *non-parties* from the undue burden of needless discovery, the court will deny plaintiffs' motion to compel this information from a non-party. *See* FED. R.CIV.P. 45(c)(3)(A)(iv).

In conclusion, the court rejects all of plaintiffs' requests to compel further testimony and documents from non-party Davis. Therefore, plaintiffs' motion in this regard will be denied. With the merits of plaintiffs' motion ruled upon, the court must now turn yet again to the satellite issue of sanctions.

### III.   *Sanctions*

Plaintiffs, defendants, and non-party Davis all move for sanctions. Plaintiffs and the government cross-move for sanctions under FED.R.CIV.P. 37, 28 U.S.C. § 1927, and the inherent powers of the court. Non-party Davis moves for sanctions against plaintiffs' counsel under FED.R.CIV.P. 37 and 45 and 28 U.S.C. § 1927. The court will deny all of these motions.

Plaintiffs are not entitled to sanctions because, as stated above, the court is rejecting all of their requests to compel further testimony and document production. Under these circumstances, Rule 37 calls for sanc-

tion only against plaintiffs, not for them. *See* FED.R.CIV.P. 37. Moreover, in light of the court's sustaining of certain objections to plaintiffs' requests, it cannot be said that either the government attorneys or attorneys for non-party Davis have "unreasonably and vexatiously" multiplied the proceedings in this case. For the same reasons, the court will decline to impose sanctions in favor of plaintiffs based upon the court's inherent powers. Thus, plaintiffs' motion for sanctions will be denied.

■ Neither defendant EOP nor non-party Davis is entitled to sanctions under Rule 37 of the Federal Rules of Civil Procedure. The court finds that plaintiffs' motion to compel, although not granted, was substantially justified. Plaintiffs sought to compel questions regarding the WHODB and Davis's duties as Special Counsel to the President, and documents arguably evidencing misconduct as to government files. While the court holds that these questions have either already been answered in relevant part or are too attenuated for discoverable circumstantial evidence, seeking answers to these questions can not be said to not be substantially justified. Plaintiffs simply had a theory of relevance based in part upon their incorrect but plausible interpretation of the court's prior rulings as to discoverability. As the Advisory Committee Notes to the 1970 amendments to Rule 37 state, "On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court." FED.R.CIV.P. 37(a)(2) Advisory Committee Notes, 1970 Amendment. The court finds this commentary to be an accurate description as to plaintiffs' motion to compel, and the court will therefore deny both cross-motions for sanctions under FED. R.CIV.P. 37.[2]

■ Similarly, the court holds that neither the government nor Davis is entitled to sanctions under 28 U.S.C. § 1927. To prevail upon a motion for sanctions under 28 U.S.C. § 1927, the movant must show that plaintiffs' counsel has acted in bad faith (or at least recklessly) and he has pursued litigation unreasonably and vexatiously. *See La-Prade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C.Cir.1998); *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 n. 6 (7th Cir. 1993). Because the court has found that plaintiffs' motion was substantially justified, the court also finds that plaintiffs' counsel has not acted recklessly or in bad faith by bringing this motion. Thus, all requests for sanctions predicated upon 28 U.S.C. § 1927 will be denied.

■ Likewise, the court will deny the government's request to assess sanctions against plaintiffs based upon the inherent powers of the court. The Supreme Court stated in *Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) that, as an exception to the American Rule of attorneys' fees shifting, the inherent powers of the court allow federal courts to assess attorneys' fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* at 45–46, 111 S.Ct. 2123. The court has already held that plaintiffs' motion was substantially justified and that it was not brought in bad faith. Therefore, the court will decline to use its inherent powers to assess attorneys' fees against plaintiffs' counsel.

■ Finally, the court rejects non-party Davis's argument for sanctions under FED. R.CIV.P. 45. Rule 45(c)(1) provides that:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

FED.R.CIV.P. 45(c)(1). An attorney's liability against an attorney is correlative to the attorney's subpoena power against a non-party.

---

2. Moreover, with regard to non-party Davis, the court finds that an award of sanctions to him would be unjust considering his own mischaracterizations in his brief, as explained *supra* Part I.

*See Id.* Advisory Committee Notes, 1991 Amendment. In this case, however, plaintiffs have not imposed an undue burden or expense on Davis by seeking to compel further testimony or documents. First, the court has denied plaintiffs' motion to compel, so Davis will be put to no further expense or burden as to plaintiffs' request. Second, contrary to Davis's assertions, plaintiffs' attempt to subpoena documents pertaining to instances of misuse of government files within Davis's possession, custody, or control was not unduly burdensome. Although the specific documents that eventually became the center of the dispute in light of Davis's testimony were ultimately held to be irrelevant, plaintiffs' subpoenaing of this subject matter was not overbroad or improper. Third, plaintiffs' motion was substantially justified and not brought in bad faith, providing further evidence of the reasonableness of the motion. Therefore, the court will deny nonparty Davis's request for attorneys' fees pursuant to FED.R.CIV.P. 45(c)(1).

### IV. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that:

1. Plaintiffs' Motion [411] to Compel Further Testimony and Further Production of Documents from Lanny J. Davis and for Sanctions is DENIED.

2. Defendant Executive Office of the President's Cross–Motion [469] for Attorneys' Fees, Costs and Sanctions is DENIED.

3. Non–Party Davis's Cross–Motion [N/D] for Sanctions Against Judicial Watch, Inc., and Larry Klayman Individually is DENIED.

SO ORDERED.