Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

CIV. Nos. 96–2123(RCL), 97–1288(RCL).

United States District Court,
District of Columbia.

March 29, 2000.

Larry Klayman, Judicial Watch, Inc., Washington, DC, for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, DC, for Defendants EOP and FBI.

David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, DC, for Hillary Rodham Clinton.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion [828 & 829] to Compel Answers to Plaintiffs' Third Set of Interrogatories to the Executive Office of the President. Upon consideration of this motion, and the opposition and reply thereto, the court will GRANT IN PART AND DENY IN PART plaintiffs' motion, as discussed and ordered below.

### I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

This particular dispute revolves around interrogatories plaintiffs served on the Executive Office of the President ("EOP") on May 13, 1999. The EOP filed their responses to these interrogatories, including several objections, on July 16, 1999. On July 27, 1999, the plaintiffs then filed a motion to compel the EOP to respond fully and without objection. After this motion was filed and discussions were held between the parties, the EOP provided verified supplemental responses to many of the interrogatories, which rendered several of the plaintiffs' arguments moot. Plaintiffs, however, still seek in their reply to compel additional information as to some of their interrogatories (interrogatories 1, 6, 9, 13, 14 and 18).

### II. Analysis

#### 1. Interrogatory Number 1

Interrogatory 1 seeks seven discrete pieces of information, requested in distinct subparts, about the FBI files of each individual on a list of close to 1,000 names, with the exception of political appointees to the Clinton Administration.[1] Plaintiffs seek to compel further information in response to two of the subparts.

Subpart (a) of this interrogatory asks for "all reasons why the FBI file was procured." Pl. Int. 1(a), p. 3. In its response, the EOP states that it "cannot warrant the complete accuracy of the information provided." EOP Resp. Int. 1(a), p. 8. The EOP further states that it compiled the information from certain EOP records, which, while "the best EOP data available, [are] not always accurate." *Id.*

▆▆▆ Rule 33(b)(1) of the Federal Rules of Civil Procedure requires that "[e]ach interrogatory shall be answered separately and fully in writing and under oath." The EOP's duty, as the responding party is to "provide true, explicit, responsive, complete and candid answers to the interrogatories." *Chubb Integrated Systems Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 61 (D.D.C.1984). These answers must be signed by the person who made them and who can attest to their accuracy. *See* FED. R. CIV. P. 33(b)(2); *Shepherd v. American Broadcasting Cos.,* 62 F.3d 1469, 1482 (D.C.Cir.1995)(holding that if the party to a suit is an organization, an officer or agent may sign the interrogatories but that person must have a basis for stating that the responses are accurate). In this case, however, the EOP has stated that it cannot warrant the complete accuracy of its response.

▆▆▆ At least one court has indicated that a responding party may not be required to admit to the accuracy of information, *if* that information was received solely from third persons and the party states in his answers the source of the information. *See Riley v. United Air Lines, Inc.,* 32 F.R.D. 230, 233 (S.D.N.Y.1962). The information on which the EOP bases its response, however, by its own admission, did not come from third persons outside of its control. Rather this information was obtained from its own documents, which are maintained within its own control. Common sense dictates that a party is responsible for ensuring the accuracy of its own records. Accordingly, the EOP has a duty to verify the accuracy of its answers. If

---

1. The EOP originally had objected to this interrogatory based on relevance. They provided a verified supplemental response, however, stating that they did not withhold any information based on this objection. Therefore, the dispute over this interrogatory is largely moot with the exception of those issues the court will now discuss.

the EOP cannot warrant the complete accuracy of its own records, it must state under oath that it took all steps necessary to ensure the accuracy of the information provided to the best of its ability and clearly explain the steps that it took to do so. *See* 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2174 (2d ed. 1994)("The burden is on the party objecting to interrogatories to show that the information sought is not readily available to it.")

Plaintiffs next contest the EOP's response to subpart (f) of Interrogatory 1, which asks for the names of the persons who had access to the FBI files. The EOP responded by naming broad categories of people who had access, including the OPS and "members of the White House Counsel's Office, on a need to know basis." EOP Resp. Int. 1(f), p. 14. The EOP objects to this question on the basis of undue burden to the extent that it would require the EOP to ascertain each individual who had access to the files. *See id.* at 15.

■ "Parties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action." FED. R. CIV. P. 26(b). The information sought by the plaintiffs is clearly relevant, if not crucial, to the pending action. As noted above, once relevance has been established, "[t]he burden is on the party objecting to interrogatories to show that the information sought is not readily available to it." 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2174 (2d ed.1994); *see also Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 844 (D.D.C. 1996) ("A party opposing discovery bears the burden of showing why discovery should be denied.")

■ The EOP has not even attempted to meet this burden. It simply makes its objection based on undue burden, without any further information or explanation. In order to satisfy its burden, the objecting party must make a specific, detailed showing of how the interrogatory is burdensome. *See Lohrenz v. Donnelly*, 187 F.R.D. 1, 4 (D.D.C.

1999) (compelling the objecting party to fully answer the interrogatory at issue because there was no showing that the research required was unduly burdensome); *Chubb*, 103 F.R.D. at 60–61 ("An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." (citation omitted)); *see also Harvey v. Eimco Corp.*, 28 F.R.D. 381, 381 (E.D.Pa.1961) ("[T]he defendant can not complain merely because in order to answer the plaintiff's interrogatories it must interrogate its personnel or compile information within its control.") Having failed to make such a showing, the court will overrule the EOP's objection and compel the EOP to answer the plaintiffs' interrogatory fully and completely, including a list of those individuals who had access to the FBI files.

### 2. Interrogatory Numbers 6, 9 & 13

■ Interrogatories 6, 9 and 13 seek the identity of all persons who have knowledge about (a) how Craig Livingstone became employed at the White House; (b) the use of Chris Emery's FBI file by the Clinton White House; and (c) the use of Billy Dale's FBI file by the Clinton White House, respectively. The EOP first objected to these interrogatories as vague, ambiguous and overbroad, because they could include persons whose sole knowledge comes from the public media. In response to this objection, the plaintiffs clarified that they are not seeking the identities of persons whose sole knowledge is from the media. The EOP then provided verified supplemental responses. These responses indicate that for each of these interrogatories, the EOP identified all persons of which it is aware who have first-hand knowledge about the issue.[2] The EOP further states, however, that "it is not aware of other individuals with second-hand knowledge about [the information requested] (other than persons in . . . the White House Counsel's Office who acquired such knowledge as a result of investigative inquiries or this litigation)." EOP Supplemental Responses at 2–3.

---

**2.** For those interrogatories concerning the FBI files of Chris Emery and Billy Dale, the EOP also represented that it has identified all persons with

"second-hand knowledge (as the result of responding to investigative inquiries)." EOP Supplemental Responses at 3.

This response seems to indicate that there are past or present members of the White House Counsel's Office who have knowledge about these topics from sources other than the media and who, therefore, should be identified. The EOP made no other objection to these interrogatories other than the objection noted above as to those who received their knowledge solely from the media. This objection, however, as the EOP states, has been rendered moot. *See* Opposition by the EOP to Plaintiffs' Motion to ·Compel Answers to the Third Set of Interrogatories to EOP at 12–14 [hereinafter EOP Opposition]. Therefore, the EOP has clearly not met its burden of showing that this discovery should be denied. The court will compel the EOP to supplement its responses, under oath, to include all individuals in the White House Counsel's Office with knowledge of these topics from any other source than the media.

### 3. Interrogatory Number 14

■ This interrogatory asks for the identity of all persons who recommended or who helped make the decision that Kathleen Willey's letters to President Clinton should be released by the White House.

The EOP objects to the phrase "helped make" the decision as vague, ambiguous and overbroad. Once again, however, the EOP relies solely on their objection, without any specific showing of how the interrogatory is burdensome. This court fails to see how including the names of those who helped those few individuals the EOP listed as the "decision-makers" is overly burdensome. Thus, the EOP has failed to meet its burden of showing that the discovery sought should be denied. This court will compel the EOP to supplement its responses to include the name of the individuals who helped make the

decision to release the Kathleen Willey letters.

The EOP next objects to the plaintiffs' request for the names of those who recommended the release of the Kathleen Willey letters. The EOP asserts that such information is protected by the attorney-client and deliberative process privileges, because, by identifying such individuals, the EOP would reveal the substance of their deliberations and advice. The court will first turn its analysis to the EOP's assertion of the attorney-client privilege.

■ "It is settled law that the party claiming the privilege bears the burden of proving that the communications are protected." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C.Cir.1998). The proponent of the privilege "must conclusively prove each element of the privilege."[3] *Id.* (quoting *SEC v. Gulf & Western Indus.*, 518 F.Supp. 675, 682 (D.D.C.1981)).

■ To meet this burden, the EOP simply refers to a declaration from Charles F.C. Ruff, former White House Counsel, which was provided with the EOP's opposition to the plaintiffs' motion to compel answers to the first set of interrogatories. In the first set of interrogatories, the plaintiffs sought to discover any and all of Bruce Lindsey's knowledge, discussions and communications regarding the release or use of documents ·from Kathleen Willey. The EOP objected based on privilege and provided Ruff's declaration in support of its claim of privilege. In this declaration, Ruff states

> [t]he discussions at issue are protected by the attorney-client privilege and the attorney work product doctrine. Ms. Mills, Mr. Lindsey and I are the senior lawyers in the Office of the White House Counsel and, as such, represent both the Executive Of-

---

**3.** As this court has previously stated, the attorney-client privilege applies when:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b)without the presence of strangers (c) for the purpose of

securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 4, n. 2 (D.D.C. March 6, 2000); *Alexander v. FBI*, 186 F.R.D. 154, 161 (D.D.C. 1999) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984)).

fice of the President and the President in his official capacity. At the time of the '60 Minutes' interview, one of our principal responsibilities was to provide legal advice to the President in connection with any impeachment proceedings.... It was in this context that, in determining what advice to give to the President, we considered, among other things, whether there were any legal constraints on the ability of the EOP to release the letters and the implications of releasing them.

Ruff Declaration at 2.

This declaration fails to demonstrate, however, how revealing the names of those who recommended the release of the Willey letters would reveal privileged attorney-client communications. There is no indication that all of those who recommended the release of the letters and, therefore, whose names are being withheld are, in fact members of the White House Counsel's office or even of any bar.[4] Nor is there any evidence that the recommendation was made in the context of providing professional legal advice. *See In re Lindsey*, 158 F.3d at 1270 ("[W]here one consults an attorney not as a lawyer but as a friend or a business adviser or banker, or negotiator ...the consultation is not professional nor the statement privileged.")(citing 1 MCCORMICK ON EVIDENCE § 88, at 322–24 (4th ed.1992)(alteration in original)). The EOP states that by identifying those persons who recommended the letters be released, it would "necessarily" be revealing the substance of privileged attorney-client communications. EOP Opposition at 17. This court has already held in this case, however, that such a statement falls far short of the EOP's burden of demonstrating the applicability of the privilege. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order of January 24, 2000 at 7–9 (rejecting President Clinton's claim of privilege based on his argument that answering the plaintiffs' questions would "necessarily reveal the contents of communications between 'privileged persons'"). Therefore, the court rejects the EOP's claim of the attorney-client privilege.

The EOP also claims that the names of those individuals who "recommended" that the letters be released is protected by the deliberative process privilege. The deliberative process privilege is "predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fish bowl." *Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C.Cir.1990)(quotation omitted). The purpose of the privilege is threefold:

> First, the privilege protects candid discussions within an agency. Second, it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy. Third, it protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to issuing their final decisions.

*Judicial Watch v. Clinton*, 880 F.Supp. 1, 12 (D.D.C.1995), *aff'd*, 76 F.3d 1232 (D.C.Cir. 1996).

To prove the applicability of the deliberative process privilege, an agency must show that the information sought is predecisional and deliberative. *See Access Reports v. Department of Justice*, 926 F.2d 1192, 1194 (D.C.Cir.1991). The EOP, however, does not make such a showing. To support its privilege claim, the EOP again simply refers to the Declaration of Charles Ruff, which was attached to the EOP's opposition to the plaintiffs' motion to compel answers to their first set of interrogatories. This declaration, however, as noted above, pertains only to discussions held between the senior lawyers of the White House Counsel's Office. It does not address the information sought in this interrogatory. Furthermore, it is not at all self-evident that a list of the individuals who recommended that the EOP release the letters, which was ultimately the final decision made by the EOP, is either predecisional or deliberative. Therefore, the EOP has again failed to meet its burden of establishing the applicability of this privilege. For these reasons, the court will compel the EOP

---

4. In fact, the EOP stated, in its Responses and Objections to Plaintiffs' First Set of Interrogatories to the EOP Pursuant to Court Order of April 13, 1998, that Assistant to the President Sidney Blumenthal discussed the matter with Hillary Rodham Clinton and both "agreed that the letters should be released." *Id.* at 56.

to provide the names of those individuals who recommended the release of the Willey letters.[5]

### 4. Interrogatory Number 18

■ This interrogatory asks for all of the EOP's knowledge about the removal of the FBI files from Vincent Foster's office or the White House Counsel's suite, during the week after Foster's death. The EOP objected on the grounds of relevancy to the extent the interrogatory seeks to include persons who were current Clinton Administration employees, vagueness and ambiguity regarding the term "removal," and overbreadth and undue burden regarding inclusion of "the White House Counsel's suite." In their opposition, the EOP states that this dispute is moot because it did not withhold any information on the basis of its objections. However, in the EOP's supplemental response, under oath, it states only that it did not withhold any information based on its objection to the term "removal". EOP Supplemental Responses at 3. It does not address the other objections. *See id.* Perhaps recognizing this, the EOP still argues in its opposition that the two remaining objections "are, in fact, well-founded." EOP Opposition at 15.

Specifically, EOP objects to the interrogatory to the extent it seeks to include persons who were then current Clinton Administration employees as irrelevant. The court agrees with the EOP's argument. This court has already ruled in this case that the information regarding the files of then-current Clinton Administration employees is irrelevant to the pending action. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 8 (D.D.C. May 17, 1999) (stating that if the information plaintiffs sought related to "the files only of then-current Clinton Administration employees, then plaintiffs' inquiry seeks irrelevant matter because this

information does not pertain to plaintiffs in this lawsuit"); *Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 8 (D.D.C. Apr. 16, 1999)(holding that issues related to files of then-current Clinton Administration employees are irrelevant to the pending action). Therefore, the EOP need not respond to Interrogatory 18 as to all then-current Clinton Administration employees.

The EOP also objects to the plaintiffs' inclusion of "the White House Counsel's suite" in interrogatory 18 as overbroad and imposing an undue burden. Once again, however, the EOP does not meet its burden of showing how this interrogatory is burdensome. In fact, the information that EOP provides is evidence that the interrogatory would actually impose very little burden on the EOP. First, the EOP states in its opposition, but not under oath, that no information was withheld on the basis of this objection. It is not burdensome, then just to provide this information under oath.[6]

Second, the EOP also states in their opposition that "[p]laintiffs' Exhibit One shows that the vast majority of these background reports—indeed all but one—were not even requested until *after* Vince Foster's death on July 20, 1993, and therefore could not have been removed from Foster's office following his death." EOP Opposition at 16, n. 13 (emphasis in the original). By the same token then, only one of these files could have been removed from the White House Counsel's suite at the time in question as well. Therefore, the EOP could simply provide this information under oath and indicate whether that one file was removed from the White House Counsel's Office. The court finds that requiring such a response is clearly not oppressive or burdensome. Therefore, the court rejects the EOP's argument, and the EOP will be compelled to respond to this

---

5. The court also notes that even if the EOP had met its burden of establishing that the information sought by the plaintiffs is protected by the attorney-client or deliberative process privilege, the plaintiffs would still be entitled to this information, due to the crime-fraud and misconduct exceptions to these privileges. This court, addressing this issue in another decision issued this same date, has found that the plaintiffs have sufficiently established that this exception would

apply in this case. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 10–20.

6. Rule 33(b) of the Federal Rules of Civil Procedure requires that "[e]ach interrogatory shall be answered separately and fully in writing and under oath." Thus, plaintiffs are clearly entitled to have the complete answers to their interrogatories made under oath.

interrogatory without any objection as to the inclusion of the White House Counsel's Office.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that Plaintiffs' Motion [828 & 829] to Compel Answers to Plaintiffs' Third Set of Interrogatories to the EOP is GRANTED IN PART AND DENIED IN PART. In this regard, it is FURTHER ORDERED that:

1. Plaintiffs' request to compel further answers to interrogatories 1, 6, 9, 13 and 14 is GRANTED. The EOP shall, within 20 days of this date, provide full and complete responses under oath to these interrogatories.

2. Plaintiffs' request to compel a further answer to interrogatory 18 is GRANTED IN PART AND DENIED IN PART. The EOP shall, within 20 days of this date, provide a verified response to this interrogatory without objection as to the inclusion of the "White House Counsel's suite." The EOP need not, however, respond to this interrogatory as to all then-current Clinton Administration employees.

SO ORDERED.