Elouise Pepion COBELL,
et al., Plaintiffs,

v.

Gale A. NORTON, Secretary of the
Interior, et al., Defendants.

No. CIV.A. 96–1285(RCL).

United States District Court,
District of Columbia.

Feb. 5, 2003.

Keith M. Harper, Lorna K. Babby, Native American Rights Fund, Washington, DC, Dennis Marc Gingold, Washington, DC, Elliott H. Levitas, Kilpatrick Stockton, LLP, Washington, DC, for Plaintiffs.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Litigation Branch, Ben Franklin Station, Washington, DC, Brian L. Ferrell, U.S. Dept. of Justice, ENRD, Ben Franklin Station, Washington, DC, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Charles Walter Findlay, III, Ben Franklin Station, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Seth Brandon Shapiro, Phillip Martin Seligman, Michael John Quinn, U.S. Dept. of Justice, Civil Division/Ben Franklin Station, Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civil Division, Federal Programs Branch, Washington, DC, Gino D. Vissicchio, Jennifer R. Rivera, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civil Division, Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, John Warshawsky, John J. Siemietkowski, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Division, Annandale, VA, John Stemplewicz, U.S. Dept. of Justice, Ben Franklin Station, Civil Division, Washington, DC, John R. Kresse, Timothy E. Curley, U.S. Dept. of Justice, Civil Division–Commercial Litigation Branch, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, Daniel Gordon Jarcho, Herbert Lawrence Fenster, Michael James Bearman, McKenna, Long & Aldridge, LLP, Washington, DC, B. Michael Rauh, Manatt, Phelps & Phillips, LLP, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the Court on plaintiffs' consolidated motion (1) for an order pursuant to Rule 53(a)(2) of the Federal Rules of Civil Procedure adopting Special Master Alan Balaran's May 11, 1999 opinion and holding that the deliberative process privilege and work product doctrine will not shield from disclosure material related to the administration of the IIM Trust, (2) to compel the testimony of deponents that defendants directed not to answer questions on the basis of deliberative process privilege, and (3) for sanctions pursuant to Rule 37(a)(4)(A), which was filed on December 30, 2002. Also before the Court are five motions relating to the application of the deliberative process privilege to a sealed document attached as an exhibit to the August 8, 2002 Special Report of the Court Monitor.

Each of the motions presently before the Court turns on whether information for which defendants have asserted privilege falls within the scope of the deliberative process privilege. Accordingly, before turning to the individual assertions of privilege, the

Court will examine the contours of the deliberative process privilege in order to determine the scope of materials that it protects.

## I. THE DELIBERATIVE PROCESS PRIVILEGE

A recent case from this Circuit provides a useful overview of the deliberative process privilege:

The most frequent form of executive privilege raised in the judicial arena is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Although this privilege is most commonly encountered in Freedom of Information Act ("FOIA") litigation, it originated as a common law privilege. Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative. Both requirements stem from the privilege's "ultimate purpose[, which] ... is to prevent injury to the quality of agency decisions" by allowing government officials freedom to debate alternative approaches in private. The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.

The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, ad hoc basis. "[E]ach time [the deliberative process privilege] is asserted the district court must undertake a fresh balancing of the competing interests," taking into account factors such as "the relevance of the evidence," "the availability of other evidence," "the seriousness of the litigation," "the role of the government," and the "possibility of future timidity by government employees." For exam-

ple, where there is reason to believe the documents sought may shed light on government misconduct, "the privilege is routinely denied," on the grounds that shielding internal government deliberations in this context does not serve "the public's interest in honest, effective government." *In re Sealed Case,* 121 F.3d 729, 737–38 (D.C.Cir.1997) (citations and footnotes omitted). An earlier case noted that the rationale for the privilege stems from the recognition by the courts "that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fish bowl." *Dow Jones & Co. v. Dep't of Justice,* 917 F.2d 571, 573 (D.C.Cir.1990). This Court has stated that the purpose of the privilege is threefold: (1) "protect[ing] candid discussions within an agency," (2) "prevent[ing] public confusion from premature disclosure of agency opinions before the agency established its final policy," and (3) "protect[ing] the integrity of an agency's decision[, in that] the public should not judge officials based on information they considered prior to issuing their final decisions." *Alexander v. FBI,* 192 F.R.D. 50, 55 (D.D.C.2000) (citing *Judicial Watch v. Clinton,* 880 F.Supp. 1, 12 (D.D.C.1995)). It is important to keep these purposes in mind when evaluating the scope of information that the privilege should protect, because it stands to reason that its scope should not exceed the scope of the purposes that it serves.

In order to assert the privilege, the government must establish two elements. First, the government must establish that the information for which protection is sought is "predecisional," that is, that it was "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." *Petroleum Information Corp. v. U.S. Dep't of the Interior,* 976 F.2d 1429, 1434 (D.C.Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft,* 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). "Accordingly, to approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed." *Senate of Puerto Rico v.*

*U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C.Cir.1987) (internal quotation omitted). The primary reason for denying protection to information generated *after* the adoption of agency policy is to prevent the creation of "secret law" that is unavailable to the public. *See Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C.Cir.1997) ("A strong theme of our [deliberative process] opinions has been that an agency will not be permitted to develop a body of 'secret law' . . . .") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)). Additionally, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866.

 Second, the government must show that the information at issue was "deliberative" in nature. Implicit in the name of the privilege is the assumption that there must have been a process of decision-making, in which the information at issue played a role. *See Coastal States*, 617 F.2d at 868 ("It is also clear that the agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process.") (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C.Cir.1975)). It is not enough to show that the information was conveyed during the deliberative process; instead, the statement or document must have been "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are predecisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made." *Vaughn*, 523 F.2d at 1144. Case law from the D.C. Circuit points to two non-conclusive factors that may assist courts in determining whether or not an opinion or recommendation is "deliberative": (1) the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document" and (2) "the relative positions in the agency's chain of command occupied by the document's author and recipient." *Senate of Puerto Rico*, 823 F.2d

at 585 (internal quotations and citations omitted). Thus, for example, "[i]ntra-agency memoranda from 'subordinate' to 'superior' on an agency ladder are likely to be more 'deliberative' in character than documents emanating from superior to subordinate." *Schlefer v. United States*, 702 F.2d 233, 238 (D.C.Cir.1983) (citing cases). Conversely, a memorandum from a superior agency official to a subordinate official is more likely not to be considered "deliberative." *Id.*

 If the government establishes these two elements with respect to the statement or document at issue, it has demonstrated the existence of the deliberative process privilege. It should be noted, however, that the privilege is not absolute but qualified. *See In re Sealed Case*, 121 F.3d at 737 ("The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need."); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C.Cir.1984) ("[U]nlike the absolute state secrets privilege, [the deliberative process privilege] is relative to the need demonstrated for the information."). Accordingly, once the elements of the privilege have been met, the burden shifts to the party opposing the privilege to establish that its need for the information outweighs the interest of the government in preventing disclosure of the information. *See In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1425 (D.C.Cir.1998) (clarifying that if the privilege is determined not to apply, the balancing test is unnecessary). In this Circuit, courts balance the interests by using a five-factor test derived from *Schreiber v. Society for Savings Bancorp, Inc.*, 11 F.3d 217 (D.C.Cir.1993), in which the D.C. Circuit explained that "[a]t a minimum, the court must consider: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence, (iii) the 'seriousness' of the litigation, (iv) the role of the government in the litigation, and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* at 220–21.

■■■ It has been said that "general guidelines are of limited utility in this area, for the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Senate of Puerto Rico*, 823 F.2d at 585. Nevertheless, courts have established some useful guidelines regarding the sort of information that is likely to fall within the scope of the privilege, as well as the sort of information that is likely to fall outside its bounds. Thus, it is well-established that discussions of objective facts, as opposed to opinions or recommendations, are not protected by the privilege. *See, e.g., In re Subpoena Served Upon Comptroller of Currency and Sec. of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C.Cir.1992) ("The bank examination privilege, like the deliberative process privilege, shields from discovery only agency opinions or recommendations; it does not protect purely factual material.") (citing *EPA v. Mink*, 410 U.S. 73, 90, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)). However, even factual information may be protected if "the manner of selecting or presenting those facts would reveal the deliberative process, or if the facts are 'inextricably intertwined' with the policymaking process." *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C.Cir.1980) (citing *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 68 (D.C.Cir.1974) and *Soucie v. David*, 448 F.2d 1067, 1078 (D.C.Cir.1971)). "But this exception cannot be read so broadly as to undermine the basic rule; in most situations factual summaries prepared for informational purposes will not reveal deliberative processes and hence should be disclosed." *Paisley v. CIA*, 712 F.2d 686, 699 (D.C.Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C.Cir.1984). Moreover, if the factual material is severable from the information protected under the privilege, the former must be disclosed. *See, e.g., United States v. Exxon Corp.*, 87 F.R.D. 624, 636–37 (D.D.C.1980) (ordering the Department of Energy to excise factual materials from information protected by the privilege and provide the factual information to the opposing party).

■■■ Other general conclusions may also be derived from the case law. Drafts of agency orders, regulations, or official histories are routinely deemed to be protected by the privilege. *See, e.g., Dudman Communications Corp. v. Dep't. of the Air Force*, 815 F.2d 1565 (D.C.Cir.1987) (protecting draft manuscript of official history of Air Force involvement in Vietnam); *Arthur Andersen & Co. v. IRS*, 679 F.2d 254 (D.C.Cir.1982) (protecting draft of IRS revenue ruling); *Pies v. IRS*, 668 F.2d 1350 (D.C.Cir.1981) (protecting draft of proposed IRS regulations). Additionally, the D.C. Circuit has stated that the privilege

> covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position. To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency; "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." We also ask whether the document is recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another.

*Coastal States*, 617 F.2d at 866 (quoting *United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

## II. THE ATTACHMENT C MOTIONS

■■■ On August 8, 2002, Court Monitor (now Special Master–Monitor) Joseph S. Kieffer III ("the Monitor") filed a special

report with this Court.[1] Submitted with the Special Report was a document located at Attachment C that was filed with the Court under seal ("Attachment C"). On October 18, 2002, in response to motions filed by both parties, the Court directed the Monitor to provide counsel for the parties with copies of Attachment C under seal. The Court also ordered counsel to honor the seal on the document, limiting access to Attachment C and any communications about it only to personnel in their offices who would be required to view or discuss the document in order to prepare submissions by counsel. Finally, the Court ordered the parties to file any portion of their future submissions to the Monitor that referred to the content of Attachment C under seal.

In a letter dated October 21, 2002, the Monitor directed the parties to file briefs addressing the further disposition of copies of Attachment C. Defendants filed their brief under seal on October 24, asserting that Attachment C fell within the scope of the deliberative process privilege.[2] The next day, plaintiffs filed a reply brief under seal requesting that the Court unseal Attachment C. On November 9, defendants filed a further response in support of their request that Attachment C remain sealed. Defendants filed two further motions requesting that the Court strike references to the content of Attachment C that were made by plaintiffs' counsel during a November 5, 2002 hearing, and in plaintiffs' second reply brief in support of their request that Attachment C be unsealed.

Each of these motions turns on whether the contents of Attachment C fall under the protection of the deliberative process privilege. However, the Court is unable to make a determination regarding the application of the privilege to Attachment C because the government has not properly invoked the privilege.

■ In this Circuit, the proper invocation of the privilege requires: (1) a formal claim of privilege by the head of the department possessing control over the requested information, (2) an assertion of the privilege based on actual personal consideration by that official, and (3) a detailed specification of the information for which the privilege is claimed, along with an explanation why it properly falls within the scope of the privilege. *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C.Cir.2000); *see also Northrop Corp.*, 751 F.2d at 405 n. 11 ("Assertion of the deliberative process privilege . . . requires a formal claim of privilege by the head of the department with control over the information. That formal claim must include a description of the documents involved, a statement by the department head that she has reviewed the documents involved, and an assessment of the consequences of disclosure of the information."); *Wainwright v. Washington Metropolitan Area Transit Authority*, 163 F.R.D. 391, 396 ("To qualify for the privilege, documents must be reviewed by the agency head, who must file a formal declaration of privilege describing the withheld materials and the likely consequence if they were to be disclosed."); *Bigelow v. District of Columbia*, 122 F.R.D. 111, 113 (D.D.C.1988) ("In order to properly invoke the privilege, the head of the agency which controls the information must file a formal claim of privilege which shall describe the documents involved, affirmatively state that he or she has reviewed the documents and set forth an assessment of the likely consequences if the information is disclosed."); *Founding Church of Scientology of Washington, D.C., Inc. v. Director, FBI*, 104 F.R.D. 459, 464 (D.D.C.1985).

---

1. The full title of the August 8 report was "Special Report of the Court Monitor on Potential Evidence Regarding the Alleged Suppression by White House and Department of Justice Attorneys of the Written Testimony of the Special Trustee Prepared for the Senate Committee on Indian Affairs' July 25, 2002 Hearing Regarding the Department of the Interior's Historical Accounting." The Court will refer to this document as "the Special Report."

2. The Court is obliged to discuss the basic arguments raised in the sealed briefs of the parties regarding Attachment C in order that it may decide upon their merits. However, the Court will refrain from discussing the content of Attachment C.

In *Landry,* the D.C. Circuit explained why its case law has not construed the term "head of the department" narrowly:

> The procedural requirements are designed to ensure that the privileges are presented in a deliberate, considered, and reasonably specific manner. As we have seen, built into the requirements is the need for actual personal consideration by the asserting official. Insistence on an affidavit from the very pinnacle of agency authority would surely start to erode the substance of "actual personal" involvement. Further, [the privilege advances] important goals; the gains from imposing demands in the interest of careful assertion must be balanced against the losses that would result of imposing superstringent standards.

*Landry,* 204 F.3d at 1135–36 (internal quotations and citations omitted). Thus, for example, in *Tuite v. Henry,* 98 F.3d 1411, 1417 (D.C.Cir.1996), counsel for the Justice Department's Office of Professional Responsibility, rather than the Attorney General, was permitted to invoke the law enforcement investigatory privilege, the formal requirements of which are virtually identical to those of the deliberative process privilege. In *Landry,* the court permitted the regional director of the FDIC's division of supervision, rather than the head of the FDIC, to assert the deliberative process and law enforcement privileges. *Landry,* 204 F.3d at 1136. In *Koehler v. United States,* 1991 WL 277542 (D.D.C.1991), this Court permitted the commanding general of the U.S. Army Criminal Investigation Command, rather than the Secretary of the Army, to invoke the criminal investigation privilege, the requirements of which are similar to those of the deliberative process privilege. Moreover, in *Alexander v. FBI,* 186 F.R.D. 154, 166–69 (D.D.C.1999), although this Court found that the elements of the law enforcement privilege had not been met, it never stated that it would have been necessary for the Secretary of Defense to assert the privilege, rather than the Inspector General and General Counsel of the Defense Department. Accordingly, it is unnecessary for the Secretary of the Interior herself to file an affidavit in order to assert the deliberative process privilege; rather, it will be sufficient for the head of the bureau or office within the Interior Department that possesses control over the requested information to file the necessary affidavit.

Defendants will be provided with an opportunity to submit an affidavit that conforms with the requirements for proper invocation of the privilege. Plaintiffs will then be afforded an opportunity to submit a statement setting forth the reasons why the information is not privileged, as well as why they need the information contained in Attachment C. Defendants may then file a reply to plaintiffs' statement. The Monitor will determine whether the information is privileged and, if so, whether plaintiffs' need for the information outweighs the interest of the government in preventing disclosure of the information. The Monitor will then issue a recommendation as to whether Attachment C should remain under seal, as well as a recommendation on the five pending motions concerning the disposition of this document. His recommendation will be subject to review by this Court as appropriate, upon objections made by either party.

Future assertions of the deliberative process privilege with respect to documents will be assessed by the Court in accordance with the following procedure. If defendants assert the privilege with respect to any document, plaintiffs must file a motion to compel with either the Special Master or Special Master–Monitor, depending on which official is overseeing discovery involving the document at issue. If defendants file an opposition brief to plaintiffs' motion to compel, defendants may include with it a cross-motion for a protective order. Defendants must submit an affidavit conforming with the requirements for invoking the privilege on or before the date that they file their opposition brief. Failure to submit an affidavit that conforms with these requirements on the date that defendants file their opposition brief will be deemed to constitute a waiver of defendants' objection to production of the document on the basis of the deliberative process privilege. Additionally, on or before the date that defendants file their opposition brief, defendants will be required to submit the document to the Special Master or Spe-

cial Master–Monitor, as appropriate, for in camera inspection. In camera submission will enable the Special Master or Special Master–Monitor to make a timely recommendation to the Court regarding the application of the privilege, and will reduce the burden of defendants because the affidavit need not conform to the "same degree of specificity as in a case where [the Court] was relying on the affidavit [alone] to decide whether valid grounds existed for assertion of the privilege." *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 543 (D.C.Cir.1977). Plaintiffs will then be afforded an opportunity to file a reply brief with the Special Master or Special Master–Monitor setting forth the reasons why they need the information contained in the document. The Special Master or Special Master–Monitor will then make a decision or recommendation as to the applicability of the privilege to the deposition testimony for which it is being asserted. His decision or recommendation will be subject to review by this Court as appropriate, upon objections made by either party.

## III. PLAINTIFFS' MOTION TO COMPEL

Plaintiffs have also moved to compel the deposition testimony of several witnesses for which defendants have invoked the protection of the deliberative process privilege. The two leading commentators on the federal courts have stated that "[a] motion to compel a witness to answer questions put at a deposition should be granted if the questions are relevant and proper and denied if the questions call for privileged information." 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2286 (2d ed.1994). Defendants have made no assertion that the questions propounded by plaintiffs during the depositions at issue were irrelevant or improper. Accordingly, the Court must determine whether the questions called for answers that would reveal information protected under the deliberative process privilege.

As another court has noted, the difficulty inherent in this situation results from the fact that "most of the cases which analyze the deliberative process privilege [concern] the release of *documents* which are allegedly privileged, rather than *testimony* about allegedly privileged documents as in this case." *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 293 (N.D.W.Va.1992) (emphasis in original). Nevertheless, this Court has found ample guidance in the decision of another district court faced with the very same question during a case involving complex litigation. In *In re "Agent Orange" Product Liability Litigation*, 97 F.R.D. 427 (E.D.N.Y.1983), the district court adopted a series of procedures governing the assertion of the deliberative process privilege in conjunction with deposition testimony:

> If the government asserts the privilege with respect to a witness at a deposition, the party seeking a response has seven days to submit to the government and the special master a copy of the unanswered questions, together with a detailed statement of litigative need. Seven days after that submission, the government must submit to the parties and the special master an affidavit by an official of the agency on whose behalf the privilege is asserted, stating why the privilege applies and what harm disclosure of the response would cause. In addition, the government must submit to the special master a detailed summary of the responses the witness would have made absent the privilege.

*Id.* at 430.

This Court agrees with the *Agent Orange* court that these procedures represent a "practical and efficient method for handling possible assertions of the privilege by the government." *Id.* at 429. Accordingly, it will adopt a modified version of these procedures in the instant case. If defendants assert the deliberative process privilege in response to a deposition question, plaintiffs will have seven days to submit to the Special Master or Special Master–Monitor, as appropriate, a copy of the unanswered questions, together with a detailed statement setting out the reasons why they require answers to these questions, and provide a copy of the statement and unanswered questions to de-

fendants.[3] Seven days after this submission, defendants will be required to submit to the Special Master or Special Master–Monitor an affidavit that meets the requirements for formal invocation of the deliberative process privilege, and provide a copy to plaintiffs. At the same time that they file this affidavit, defendants will be required to file under seal with the Special Master or Special Master–Monitor a detailed summary of the responses that the witness would have provided if defendants had not asserted the deliberative process privilege. The Special Master or Special Master–Monitor will then make a decision or recommendation as to the applicability of the privilege to the deposition testimony for which it is being asserted. His decision or recommendation will be subject to review by this Court as appropriate, upon objections made by either party.

## IV. PLAINTIFFS' MOTION TO ADOPT THE MAY 11, 1999

## OPINION OF THE SPECIAL MASTER

### A. Introduction

In a recent opinion, this Court explained that it would defer ruling on the issue of the binding effect of the May 12, 1999 Opinion of Special Master Balaran ("Special Master Opinion") until one of the parties had filed a motion for an order adopting the Special Master Opinion under Rule 53(e)(2) of the Federal Rules of Civil Procedure. Mem. and Order dated December 23, 2002 at 15 n. 10.[4] On December 30, 2002, plaintiffs filed such a motion.

■ The Special Master Opinion addressed issues raised by several motions to compel filed by plaintiffs, and made a series

of legal conclusions regarding the applicability of the attorney-client privilege, work product doctrine, and deliberative process privilege. The Court reviews conclusions of law made by the Special Master de novo. *D.M.W Contracting Co. v. Stolz*, 158 F.2d 405, 407 (D.C.Cir.1946); *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 3 (D.D.C.2002).

In its December 23 memorandum and order, the Court made findings as to the applicability of the attorney-client privilege in the instant litigation. The Court's findings accord with the conclusions of the Special Master Opinion. Nevertheless, the Court finds that it is unnecessary to adopt the Special Master's conclusions regarding attorney-client privilege because this portion of his opinion has been superseded by the December 23 memorandum and order.

### B. Work Product Doctrine

■ Plaintiffs also request that the Court adopt the conclusions of the Special Master Opinion dealing with the application of the work product doctrine to the instant case. Having reviewed the Master's conclusions de novo, the Court finds that they should be adopted as the law of the case.

■ Defendants express disagreement with the Master's conclusion that "the only documents as to which work-product protection in this case will be afforded are those which the Defendants have shown were prepared and created solely for use by counsel in anticipation of or in the course of this litigation." Special Master Opinion at 13. The Court acknowledges the apparent contradiction between this conclusion and the Court's recent observation that "[t]he D.C.

---

**3.** As for assertions of the privilege during depositions that were taken before the Court issued this Memorandum Opinion, plaintiffs will have seven days from the date of this Memorandum Opinion to file with the Special Master–Monitor or Special Master, as appropriate, a copy of the unanswered questions and a detailed statement explaining their need for the answers to these questions. Plaintiffs should serve defendants with copies of both of these documents at the time that they submit them to the Special Master or Special Master–Monitor.

**4.** It should be noted that, as the Court has recently stated, within ten (10) days after being served with notice of the filing of a report by one of the special masters in this case, either party may serve written objections thereto upon the other parties. If there are no objections within the ten-day period, the Court may adopt, modify, or reject the report, or adopt, modify, or reject any individual part thereof. *See* Order dated January 17, 2003 at 1 n. 1. Given the considerable time that had passed since the filing of the May 12, 1999 report, however, the Court elected to waive the ten-day requirement for filing objections with respect to that report.

Circuit has never required that documents must be shown to have been prepared solely or primarily in anticipation of litigation." Mem. and Order dated Dec. 23, 2002 at 13. The Court should have clarified that it was making a general statement about the interpretation of the work product doctrine in this Circuit, and not making a holding in the instant case. A few paragraphs later, the Court explained that it could not

> analyze, in a vacuum, whether communications or documents to which defendants might wish to assert a work product privilege warrant protection. The Court has before it only a blanket recitation that material prepared by defendants' lawyers "once the plaintiff IIM trust beneficiaries became adversaries of the defendants" constitutes work product. Lacking concrete facts, any ruling that this Court might render with respect to defendants' assertion of work product privilege would necessarily be an advisory opinion without binding effect. The Court therefore declines to enter a ruling at this time regarding defendants' generalized assertion of the work product privilege.

*Id.* at 14 (citation omitted). The problem with the typical construction of the work product doctrine is that it was not specifically intended for a situation in which defendants' trust counsel and litigation counsel are one and the same entity. On the one hand, it is clear that the work product doctrine should not shield documents prepared in order to assist in the administration of the trust from the beneficiaries, who are the true client in such an instance:

> On its face, then, the rule does not give an attorney the right to withhold work product from his own client, and in fact it has been specifically read as not requiring such a result. This result is hardly surprising in view of the evident inapplicability of the rationale for the work-product rule to an attorney's efforts to withhold the fruits of

his professional labors from the client, who presumably paid for and was the intended beneficiary of those labors.

*Martin v. Valley Nat'l Bank of Arizona,* 140 F.R.D. 291, 320 (S.D.N.Y.1991). On the other hand, the Court can envision circumstances in which documents and things prepared by counsel would involve strategic considerations in the litigation that are wholly unrelated to trust administration, and that relate solely to defendants' status as litigants, where the work product doctrine would attach.

■ The fact remains, however, that a trustee possesses an obligation to provide full and accurate information to the trust beneficiaries regarding the administration of the trust. *See In re Long Island Lighting Co.,* 129 F.3d 268, 272 (2d Cir.1997) ("[T]he ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan."); *Martin,* 140 F.R.D. at 322 ("The common law recognizes an obligation on the part of the trustee to provide full and accurate information to the beneficiary on his management of the trust."). "As part of this obligation, the trustee must make available to the beneficiary, on request, any communications with an attorney that are intended to assist in the administration of the trust." *Martin,* 140 F.R.D. at 322 (citing GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES, § 961 at 11 (rev.2d ed.1983)).

Faced with the conflict between the need of the trustee's attorneys to prepare documents in anticipation of litigation and the requirement that the trustee disclose to its beneficiaries any communications with its attorneys intended to assist in the administration of the trust, the courts have recognized that the work product doctrine is inapplicable to documents prepared to assist a trustee in its fiduciary capacity.[5] In *Everett v. USAir*

---

5. The cases cited by defendants do not contradict this proposition. Rather, these three cases represent a refusal by courts to extend the Fifth Circuit's holding in *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), to the work product doctrine. *See Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1423 (11th Cir.1994) ("[T]he Fifth

Circuit has held that the *Garner* doctrine does not apply to attorney work product. We agree.") (citation omitted); *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir. 1982) ("Since the good cause standard is the standard in *Garner,* it follows that *Garner* should not apply to work product discovery."); *Picard*

*Group, Inc.*, 165 F.R.D. 1 (D.D.C.1995), beneficiaries of an ERISA plan filed suit against their employer.[6] The beneficiaries asserted that the employer could not invoke the work product doctrine or attorney-client privilege against them because they were the true clients of any attorney who provided advice regarding the ERISA plan. *Id.* at 4. The court found that the employer could assert attorney-client privilege only when it sought legal counsel solely in its role as an employer regarding issues other than administration of the plan. *Id.* The court's conclusion regarding the work product doctrine was similar:

> Lawyers who act for fiduciaries of an employee benefit plan may assert the work product privilege since the privilege belongs, at least in part, to the attorney. But generally they may not invoke it to shield their attorney work product from their own ultimate clients, the plan beneficiaries. Accordingly, defendants may assert the work product privilege with respect to Interrogatory Nos. 8 and 10 and Document Request No. 5 to the extent that they call for information and documents that were prepared expressly in anticipation of litigation except insofar as they were prepared in anticipation of litigation on behalf of the plan beneficiaries. The burden is on them, however, to demonstrate that the information and documents were in fact prepared in anticipation of

such litigation and not for the benefit of the plan beneficiaries.

*Id.* at 5.

Similarly, in *Martin v. Valley Nat'l Bank of Arizona*, another ERISA case, the employer's former counsel sought to shield documents from the beneficiaries of the ERISA plan by asserting the work product doctrine. The court granted the beneficiaries' motion to compel the documents, explaining that

> [t]he point of the [work product] rule is to protect the integrity of the adversary process. It is therefore not surprising that the very language of Rule 26(b)(3) limits its scope to discovery efforts by another party in the context of litigation. Thus the rule states in relevant part that "*a party* may obtain discovery of documents ... otherwise discoverable under subdivision (b)(1) of this rule and *prepared* in anticipation of litigation or for trial *by or for another party* ... only upon a showing that *the party seeking discovery* has substantial need of the materials." (emphasis added).

On its face, then, the rule does not give an attorney the right to withhold work product from his own client, and in fact it has been specifically read as not requiring such a result. This result is hardly surprising in view of the evident inapplicability of the rationale for the work-product

---

*Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F.Supp. 679, 687 (W.D.Mich.1996) ("This Court agrees with those courts that hold that the *Garner* doctrine does not apply to work product immunity.").

In *Garner*, stockholders of a corporation, who were suing the corporation for acting inimically to their interests, claimed that attorney-client privilege did not apply to communications between the corporation and its attorney. *Garner*, 430 F.2d at 1097. The corporation disagreed, claiming that the attorney-client privilege absolutely protected the communications. *Id.* The court adopted neither position, holding instead that the communications would be protected by attorney-client privilege unless the stockholders demonstrated "good cause" for disclosure. *Id.* at 1103–04. It is true that the district court had relied on two English cases treating the corporation-shareholder relationship as analogous to the trustee-beneficiary relationship in reaching its decision. *Id.* at 1102. But the Fifth Circuit made clear that although these cases were "persuasive recognition that there are obligations,

however characterized, that run from corporation to shareholder and must be given recognition in determining the applicability of the privilege," they were not "binding precedents." *Id.* More importantly, *Washington–Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906, 909 n. 5 (D.D.C.1982), which established the existence of the fiduciary exception to the attorney-client privilege in this Circuit, explicitly rejected a requirement of good cause to "pierce" the privilege in a trust context. The conclusions of the cases cited by defendants thus hinge upon an analysis that has been expressly rejected by this Court. Additionally, the entities involved in these cases were corporations and their shareholders, not trustees and beneficiaries.

**6.** ERISA is the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, *et seq.* The Supreme Court has directed federal courts to read ERISA in light of the common law principles governing trusts. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

rule to an attorney's efforts to withhold the fruits of his professional labors from the client, who presumably paid for and was the intended beneficiary of those labors.

Indeed, the result for which Webster & Sheffield presses would be strikingly inconsistent with the accepted principle that an attorney is obliged to serve in a fiduciary capacity to protect the client's interests. Having been hired to serve the client, the attorney cannot fairly be authorized to subvert the client's interests by denying to the client those work papers to which the client deems it necessary to have access.

*Martin*, 140 F.R.D. at 320 (citations omitted).

Additionally, in *Lawrence v. Cohn*, 2002 WL 109530 (S.D.N.Y.2002), beneficiaries of a will filed suit against the executor for federal securities fraud. The beneficiaries sought production of documents prepared by the executor's law firm during an earlier action initiated by the executor to obtain instruction from the court in his fiduciary capacity about how to manage an aspect of the estate, which the firm claimed was protected by the work product doctrine. *Id.* at *4. The court refused to permit the firm to assert the work product doctrine to shield the documents prepared in the earlier proceeding:

> As for the claimed work-product protection for notes and memoranda pertaining to the [earlier] proceeding, the difficulty for [the firm] is that, insofar as the firm represented Cohn in his fiduciary capacity, it was serving *de facto* as counsel for the estate, and, necessarily, its beneficiaries. Indeed, it was precisely for this reason that Cohn was required to obtain separate counsel to represent him personally.

> An attorney may not withhold work product from his own client. Moreover, that principle has been applied to bar such immunity claims by counsel for a fiduciary in the face of the beneficiaries' demand for access. To the extent that [the firm] represented Cohn in his fiduciary capacity, as it plainly did in the [earlier] proceeding, the same result applies here.

*Id.* at *6 (citations omitted).

As in the case of attorney-client privilege, once the trustee's interest wholly diverges from the interest of the beneficiaries, a fiduciary exception may no longer apply and work product protection may attach. The difficulty in the instant case, of course, is whether the work product doctrine should apply when the documents at issue do not *exclusively* concern the administration of the trust or other matters implicating the trustees' fiduciary duty. In its December 23 memorandum and order, this Court resolved this dilemma with respect to the attorney-client privilege by placing the burden on defendants to demonstrate that they "obtained legal advice *solely* to protect [themselves] personally or the government from civil or criminal liability, an objective that is inherently inconsistent with [their] fiduciary capacity." Mem. and Order dated Dec. 23, 2002 at 10.

As in the case of attorney-client privilege, this Court views the work product doctrine as applicable only where the material is developed exclusively for purposes other than the benefit of trust beneficiaries, *i.e.*, solely to aid in litigation. If the documents serve a dual purpose, the doctrine will not prevent their disclosure to the beneficiaries, consistent with the teachings of *Everett*. To hold otherwise would tempt breaching fiduciaries to shield their misdeeds from scrutiny by claiming that every act exposed them to potential fiduciary liability. The litigation anticipated, moreover, must not be litigation that is itself intended to benefit the trust beneficiaries. *See Everett*, 165 F.R.D. at 5. While the Court does not intend to deter fiduciaries, even those in breach of their obligations, from securing personal legal advice on a confidential basis, it will not afford shelter to any attempts to do so in a manner invisible to the beneficiaries, or at the trust's or beneficiaries' financial expense.

The Court now turns to the question of whether the legal conclusions of the Special Master on this issue are consistent with the Court's own conclusions. The Special Master Opinion concluded, on a more specific and better developed record, that "the only documents which need not be produced because they fall squarely within the rubric of 'work-product' are those prepared for use in this or other pending litigation and which contain the legal theories and opinions of counsel—

**14**

not as to legal compliance generally, but rather as to specific matters arising in this litigation." Special Master Opinion at 14. The Court finds no reason to disturb this conclusion, and accordingly, it will adopt the conclusions of the Special Master Opinion regarding the work product doctrine as the law of this case.

If further proceedings involving the applicability of the work product doctrine should prove necessary, the Court will expect defendants to identify the documents or information they seek to shield as work product with greater specificity, so that the Court may make an informed determination as to whether they constitute work product. Additionally, defendants should proffer the circumstances and purpose for which any claimed work product was created, as well as the persons for whose benefit the claimed work product was created. If the documents or things relate to items arising specifically in this litigation, and defendants have made an adequate showing that such communications were not created for the IIM beneficiaries' benefit, plaintiffs will then be required to address with specificity why they have a substantial need for the information contained in the documents or things.

### C. Deliberative Process Privilege

The instant memorandum opinion determines the metes and bounds of the deliberative process privilege in the instant case, and establishes procedural requirements for the assertion of that privilege. Therefore, the legal conclusions set forth in the Special Master Opinion on this topic have been superseded by the instant opinion. Accordingly, the Court will not adopt the portions of the Special Master Opinion relating to the application of the deliberative process privilege.

## V. PLAINTIFFS' MOTION FOR RULE 37 SANCTIONS

■ The sole remaining issue is plaintiffs' motion for sanctions under Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure. That rule provides, in relevant part, that if a motion to compel disclosure or discovery is granted,

the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

It is well-established that district courts are entrusted with broad discretion regarding whether to impose sanctions under Rule 37, and the nature of the sanctions to be imposed. *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C.Cir.1996); *Sturgis v. Am. Ass'n. of Retired Persons*, 1993 WL 518447 (D.C.Cir.1993) (per curiam); *Steffan v. Cheney*, 920 F.2d 74, 75 (D.C.Cir.1990). "The Supreme Court has stated that a party meets the 'substantially unjustified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C.1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)); *see also* 8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2288 (2d ed. 1994) ("Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule.").

■ At the time that defendants made their assertions of the work product doctrine and deliberative process privilege, there was no ruling by this Court that had established the general applicability of those doctrines to this case. As explained above, the Court had not adopted the Special Master Opinion at the time that defendants invoked these doctrines. The Court finds that when defendants' assertions were made, the parties could reasonably differ about whether the deposition testimony at issue was protected under the deliberative process privilege, and

whether the documents and things at issue constituted work product. Accordingly, the Court concludes that the objections were "substantially justified" for purposes of Rule 37(a)(4)(A), and it will deny plaintiffs' motion for sanctions.

A separate order shall issue this date detailing the legal conclusions and relief granted by the Court.

## ORDER

For the reasons stated in the memorandum opinion issued this date, it is hereby

ORDERED that defendants shall have seven (7) days from the date of this Order in which to submit to the Special Master–Monitor ("the Monitor") an affidavit that conforms with the requirements for proper invocation of the deliberative process privilege with respect to Attachment C of the August 8, 2002 Special Report of the Monitor ("Attachment C"). It is further

ORDERED that plaintiffs shall have seven (7) days from the date on which defendants submit the above-mentioned affidavit to the Monitor in which plaintiffs may submit a statement to the Monitor setting forth the reasons for their need of the information contained in Attachment C in the instant litigation. It is further

ORDERED that defendants shall have five (5) days from the date on which plaintiffs submit the above-mentioned statement to the Monitor in which defendants may submit to the Monitor a reply to plaintiffs' statement. It is further

ORDERED that if plaintiffs file with the appropriate special master a motion to compel the production of any document for which defendants have asserted the protection of the deliberative process privilege, then on or before the date that defendants are required to file their opposition brief, defendants shall (1) submit an affidavit to the appropriate special master from the head of the bureau or office having custody of the document that describes the document in general terms, explains why the privilege should apply, and states in detail the harm that would result from disclosure, and (2) submit the document to the appropriate special master for in cam-

era inspection. Any failure to comply with these two requirements on the date that defendants assert an objection based on the deliberative process privilege will be deemed to constitute a waiver of defendants' objection to production of the document on the basis of the deliberative process privilege. If defendants comply with the above-mentioned requirements, then on or before the date that plaintiffs are required to file their reply brief, plaintiffs shall submit a statement with the appropriate special master that sets forth the reasons for their need of the information contained in the document. No further filings by either party will be permitted except by express leave of the Court. It is further

ORDERED that plaintiffs' motion to compel testimony of deponents defendants directed not to answer questions on the basis of deliberative process privilege [1691–2] be, and hereby is, GRANTED. It is further

ORDERED that if defendants assert any future objections based on the deliberative process privilege with respect to a witness at a deposition, plaintiffs will have seven (7) days from the date on which defendants made their assertion to submit to the appropriate special master a copy of the unanswered questions, together with a detailed statement setting out the reasons why plaintiffs need answers to these questions. Within seven (7) days from the date that these documents were filed with the Court, defendants shall (1) file an affidavit with the appropriate special master from the head of the bureau or department possessing control over the requested information that contains (a) an assertion of the privilege based on actual personal consideration by that official, (b) a detailed specification of the information for which the privilege is claimed, along with an explanation why it properly falls within the scope of the privilege, and (c) a detailed statement of the harm that would result from disclosure of the information that falls within the scope of the privilege; and (2) file under seal with the appropriate special master a detailed summary of the responses that the witness would have provided if defendants had not asserted the deliberative process privilege. Any failure by defendants to comply with these two requirements within seven

(7) days will be deemed to constitute a waiver of the objection. It is further

ORDERED that plaintiffs' motion for an order pursuant to Rule 53(e)(2) adopting Special Master Balaran's May 11, 1999 opinion [1691–1] be, and hereby is, GRANTED in part and DENIED in part. It is further

ORDERED that section II of Special Master Balaran's May 11, 1999 opinion, which is entitled "Work–Product Doctrine," be adopted, pursuant to Rule 53(e)(2) of the Federal Rules of Civil Procedure. It is further

ORDERED that plaintiffs' motion for sanctions pursuant to Rule 37(a)(4)(A) [1691–3] be, and hereby is, DENIED.

SO ORDERED.